United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 29, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-60608
(consolidated with 02-60609)

SUSIE ROSS; DENITA JOHNSON; JAMES CURTIS; LARRY PICKENS; DORIS
KING; KAREN WHITLEY; RUBY MAGEE; ROY ALLEN, JR.; CHESTER NEWMAN;
SHARON WHITE,

Plaintiffs-Appellants,

versus

CITIFINANCIAL, INC., a Maryland Corporation, formerly known as
First Family Financial Services, Inc.; CITIFINANCIAL, INC., a
Maryland Corporation, formerly known as Commercial Credit of
Mississippi; CITIFINANCIAL, INC., a Tennessee Corporation,
formerly known as Commercial Credit of Mississippi; CITIFINANCIAL
SERVICES, INC., a Georgia Corporation; UNION SECURITY LIFE
INSURANCE COMPANY; AMERICAN SECURITY INSURANCE COMPANY; TRACY
MITCHELL; DARLA FARMER; JOE SMITH,

Defendants-Appellees.

DENISE HOWARD; LENA CHAMBERS; PRISCILLA CHALMERS; BETTY WHITLEY;
FAYE DENISE LOGAN; CAROL BUSECK; KELVIN JOHNSON; PHILLIP GORDON;
DEBBIE GORDON; ALISHA F. WILSON; MARGARET HAYMON; WANDA ALLEN;
MONROE HOGGATT; EUGENE HAYMON; EVA PARKER HALL,

Plaintiffs-Appellants,

versus

CITIFINANCIAL, INC., a Maryland Corporation, formerly known as
First Family Financial Services, Inc.; CITIFINANCIAL, INC., a
Maryland Corporation, formerly known as Commercial Credit of
Mississippi; CITIFINANCIAL, INC., a Tennessee Corporation,
formerly known as Commercial Credit of Mississippi; CITIFINANCIAL
SERVICES, INC., a Georgia Corporation; UNION SECURITY LIFE
INSURANCE COMPANY; AMERICAN SECURITY INSURANCE COMPANY; TRACY
MITCHELL; DARLA FARMER; JOE SMITH; JOHN DOES 1-50;
VALERIE STEVENS,

---

**Appeal from the United States District Court
for the Southern District of Mississippi
(5:01-CV-185-BN and 3:01-CV-471-BN)**

---

Before SMITH, WIENER, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For these consolidated 28 U.S.C. § 1292(b) interlocutory appeals from remand-denials where diversity-jurisdiction removal was based on fraudulent joinder, at issue is whether there is *arguably a reasonable basis* for predicting the non-diverse defendants could be liable under Mississippi law and, therefore, *not* fraudulently joined. **AFFIRMED; REMANDED.**

I.

Plaintiffs, all Mississippi residents, entered into loan agreements with Citifinancial or its predecessors. In conjunction with those loans, Plaintiffs purchased insurance, such as credit life and property, through Union Security Life Insurance Company and American Security Insurance Company.

Plaintiffs filed actions in Mississippi state court. In addition to suing Citifinancial, American Security, and Union Security (non-resident corporations), Plaintiffs sued Citifinancial employees, who were licensed insurance agents and Mississippi residents (collectively: Individual Defendants).

2

Plaintiffs alleged: their insurance premiums were excessive compared to market rates; they were inflated by commissions; and their loan interest and principal were increased by including the insurance polices within the loan amounts or unnecessarily refinancing the loans. Plaintiffs claimed breach of fiduciary duty, breach of implied covenants of good faith and fair dealing, fraudulent and negligent misrepresentation and omission, civil conspiracy, negligence, and unconscionability under Mississippi law.

Along this line, where Defendants submitted evidence of Plaintiffs' loan documents, they contained signed separate disclosure statements or signed provisions on the note or security agreements, making clear that insurance was *not* required. These statements included: "CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED TO OBTAIN THIS LOAN"; and "Credit Life and Credit Disability Insurance are NOT REQUIRED in connection with this loan and were not a factor in the approval of this extension of credit. If you chose to obtain life insurance through Lender ... the cost thereof is shown ... herein and is included in the Amount Financed". Each of the remaining Plaintiffs has at least a high school education except for one, who has a ninth grade education.

In 2001, Defendants removed the actions to federal court under 28 U.S.C. § 1441, claiming diversity jurisdiction pursuant to 28

3

U.S.C. § 1332. To that end, Defendants claimed Individual Defendants were fraudulently joined.

The district court denied Plaintiffs' remand motions, reasoning: Individual Defendants were fraudulently joined; therefore, jurisdiction was valid under § 1332. It held most of Plaintiffs' claims time-barred under Mississippi's general three-year statute of limitations, MISS. CODE. ANN. § 15-1-49(1). For Plaintiffs' remaining claims, it concluded there was *no reasonable basis* for predicting Individual Defendants could be liable. ***Howard v. Citifinancial***, No. 3:01-CV-471BN (S.D. Miss. 13 Mar. 2002); ***Ross v. Citifinancial***, No. 5:01-CV-185BN (S.D. Miss. 18 Mar. 2002). (A number of Plaintiffs had been voluntarily dismissed or did not assert claims against Individual Defendants.)

## II.

The interlocutory appeal for each action presents four issues: (1) whether the district court applied the correct standard in holding non-diverse defendants were fraudulently joined; (2) whether, under Mississippi law, an affirmative act is required to toll the statute of limitations for the claims at issue; (3) whether a party may justifiably rely on an oral representation contrary to the terms of a written contract; and (4) whether a fiduciary relationship arises in first party insurance contracts such as those at issue.

4

Fraudulent joinder is established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) inability of the plaintiff to establish a cause of action against the non-diverse plaintiff. *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)). At issue is the standard to be applied for the second of the two means for showing fraudulent joinder.

The district court noted that the removing party has the burden of showing fraudulent joinder, but that Plaintiffs could not rest upon mere allegations in their pleadings. Rather, the court could pierce the pleadings. It concluded: "In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is '*arguably a reasonable basis* for predicting that the state law *might* impose liability on the facts involved, then there is *no* fraudulent joinder' and hence *no* basis for asserting diversity of citizenship jurisdiction". *Howard*, slip op. at 8 (emphasis added) (citing *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.), *cert. denied*, 510 U.S. 868 (1993)); *Ross*, slip op. at 8 (same).

Later, however, the district court stated: "The issue before the Court is whether there is a *possibility* that liability could be imposed on the non-diverse Defendants/agents based on the facts of

the case". **Howard**, slip op. at 10 (emphasis added); **Ross**, slip op. at 9 (same). The court concluded: because Plaintiffs could not prevail on any of their claims against Individual Defendants, they were fraudulently joined. **Howard**, slip op. at 30; **Ross**, slip op. at 35.

Plaintiffs assert that the "reasonable basis" standard is not correct; that, instead, the standard is whether "there is no possibility that plaintiff [could] establish a cause of action". **Burchett v. Cargill, Inc.**, 48 F.3d 173, 176 (5th Cir. 1995). Plaintiffs also claim the district court shifted the burden of proof and did not construe all factual disputes in their favor. They contend Defendants only refuted their allegations with allegations, and as such, Plaintiffs were not required to provide evidence to refute them — that it is only after Defendants provide evidence refuting Plaintiffs' allegations that Plaintiffs must provide evidence.

Our opinions have described the fraudulent joinder standard in various ways. Recent opinions, however, have clarified that standard. "Any argument that a gap exists between the 'no possibility' and 'reasonable basis' of recovery language was recently narrowed, if not closed". **Travis**, 326 F.3d at 648. The court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. **Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.**, 313 F.3d 305, 312

6

(5th Cir. 2002). This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one. *Id.; Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000) (rejecting contention that theoretical possibility of recovery is enough to support no fraudulent joinder, citing "reasonable basis" standard); *Griggs*, 181 F.3d at 701 ("While the burden of demonstrating fraudulent joinder is a heavy one, we have never held that a particular plaintiff might possibly establish liability by the mere hypothetical possibility that such an action could exist".).

Nonetheless, the burden of persuasion on those claiming fraudulent joinder remains a heavy one. *Travis*, 326 F.3d at 648. Along these lines, our court has recognized the similarity between standards for Federal Rule of Civil Procedure 12(b)(6) (failure to state claim) and fraudulent joinder. *Id. See Great Plains Trust*, 313 F.3d at 312. The scope of the inquiry for fraudulent joinder, however, is broader than that for Rule 12(b)(6).

For fraudulent joinder *vel non*, it is well established that the district court may "pierce the pleadings" and consider summary judgment-type evidence. *Travis*, 326 F.3d at 648-49 (citing *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990)). In conducting this inquiry, the district court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in

7

the light most favorable to the plaintiff". ***Travis***, 326 F.3d at 649.  In addition, the court must resolve all ambiguities of state law in favor of the non-removing party.  ***Id.***

The district court properly applied these standards.  It cited the "reasonable basis" standard; and, although it also discussed the "possibility" of recovery, it never looked for a "mere theoretical possibility of recovery".  It also correctly noted that it could "pierce the pleadings", but that it must construe all disputed questions of fact and ambiguities of law in Plaintiffs' favor.  Contrary to Plaintiffs' assertion, it did not shift the burden to them upon Defendants' asserting contrary allegations. Finally, it construed all allegations and evidence in Plaintiffs' favor.

B.

The district court ruled that most of Plaintiffs' claims were time-barred; their claims had not been fraudulently concealed; and, had they been, the time for bringing an action would be tolled.  In this regard, the court applied Mississippi's general three-year statute of limitations, MISS. CODE ANN. § 15-1-49(1) ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after").  *E.g.,* ***Stephens v. Equitable Life Assurance Society of the United States***, __ So. 2d __, 2003 WL

8

1343254 at *3 (Miss. 20 March 2003) (applying statute to claim of fraud and misrepresentation of sale of insurance).

Claims asserted three years after their accrual may be actionable *if* they were fraudulently concealed and Plaintiffs could not discover them with reasonable diligence.  In that event, the limitations period begins to run when the claims are discovered.

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

MISS. CODE. ANN. § 15-1-67.  Along this line, ***Robinson v. Cobb***, 763 So. 2d 883 (Miss. 2000), provides that, in order to toll the limitations period, Plaintiffs must prove:  "[Defendant] engaged in *affirmative acts of concealment*"; and "though [Plaintiffs] acted with due diligence in attempting to discover [the claim], they were unable to do so".  ***Id***. at 887 (emphasis added; internal quotation and citation omitted).

Nevertheless, Plaintiffs contend the district court erred by requiring them to prove an affirmative act of concealment and assert that, in cases of fraud, no subsequent act of concealment is necessary.  Defendants counter that, although the Mississippi Supreme Court has not ruled on this issue in the context of credit insurance sales, it has established that a subsequent affirmative act of fraudulent concealment is necessary to toll limitations

9

where the underlying claim is for fraud. Otherwise, the limitations begin to run when Plaintiffs receive documents which, if read, would lead to discovery of the claim.

Mississippi law is unambiguous: Plaintiffs must prove a subsequent affirmative act of fraudulent concealment to toll the limitations. *Stephens*, 2003 WL 1343254, held that the fraudulent concealment doctrine applied to a fraud claim. There, plaintiffs alleged defendants misrepresented that a life insurance contract had vanishing premiums. The court stated that fraudulent concealment was required to toll the limitations period; and, because the terms were written in the policies, plaintiffs could not show such concealment.

Further, in *Reich v. Jesco, Inc.*, 526 So. 2d 550 (Miss. 1988), plaintiff's structure collapsed 12 years after construction. Plaintiff sued the builder for negligence, strict liability, and breach of warranty. He claimed the limitations period was tolled because the faulty construction was not evident until after the collapse. In holding the limitations period was *not* tolled, the Mississippi Supreme Court cited two prior opinions: *Dunn v. Dent*, 153 So. 798 (Miss. 1934); and *Lundy v. Hazlett*, 112 So. 591 (Miss. 1927).

In each, defendant falsely represented that land conveyed to plaintiff was larger than it was. Limitations were tolled in *Lundy*, but not in *Dunn*. In *Reich*, the court distinguished these

10

cases by noting that, in *Lundy*, defendants made "express, fraudulent representation[s] ... calculated to conceal ... after completion of the sale", *Reich*, 526 So. 2d at 552 (internal quotation omitted); in *Dunn*, plaintiffs failed to show defendant "did anything that could be construed as a concealment of the falsity of the representation", *id*. (internal quotation omitted).

As stated, Mississippi law is unambiguous. Pursuant to § 15-1-67, Plaintiffs were required to prove an affirmative act of fraudulent concealment post-completion of the insurance sales in order to toll the statute of limitations.

C.

The district court held that, under Mississippi law, a plaintiff has a duty to read a contract before signing it and cannot reasonably rely on oral misrepresentations regarding its terms. Accordingly, it held both that the statute of limitations was not tolled because Plaintiffs' claim was not fraudulently concealed and that Plaintiffs did not state valid substantive claims of fraudulent or negligent misrepresentation.

Plaintiffs maintain that, under Mississippi law, the rule that a party must read a contract before signing it does not apply if the party was induced by fraud or false representations in entering into that contract. Defendants counter that, as a general rule, Mississippi imputes knowledge of a contract to the signatory, and a contracting party cannot reasonably rely on oral representations

11

that conflict with its written terms. Defendants accept that the Mississippi Supreme Court has created a limited exception for cases of *fraud in factum*, that is, where the character of the document is misrepresented. Defendants assert that the exception does not apply here, because Plaintiffs claim *fraud in inducement*, that is misrepresentations about the terms of the contract.

"[A] party is under an obligation to read a contract before signing it, and *will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract*". **Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.**, 584 So. 2d 1254, 1257 (Miss. 1991) (emphasis added). *See* **Russell v. Performance Toyota, Inc.**, 826 So. 2d 719, 726 (Miss. 2002) ("In Mississippi, a person is charged with knowing the contents of any document that he executes".); **Cherry v. Anthony, Gibbs & Sage**, 501 So. 2d 416, 419 (Miss. 1987) (in the context of an insurance policy, knowledge of contract terms is "imputed to [the contracting party] as a matter of law").

**Stephens**, 2003 WL 1343254, is highly persuasive authority that the Mississippi Supreme Court would bar Plaintiffs' claims. There, plaintiffs sued an insurer and their agent, Bell, claiming Bell had fraudulently represented that the life insurance policies they had purchased had vanishing premiums. They brought their claims after the limitations period, but asserted it was tolled because of

12

fraudulent concealment. Significantly, *Stephens* cited *Godfrey, Basset & Kuykendall* for the following proposition:

> [I]nsureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy. Any alleged oral agreement in this case does not have any effect on the written insurance contract.

2003 WL 1343254 at *4 (internal citation omitted). The court concluded plaintiffs could not show fraudulent concealment because the terms of the insurance contract unambiguously stated that premiums did not vanish. *Stephens* and the actions at hand are indistinguishable.

The Mississippi Supreme Court appears to apply two exceptions to the rule that knowledge of written terms is imputed to contract signatories: fraud in factum and equitable relief. Neither exception applies here.

First, fraud in factum

> is defined as "[m]isrepresentation as to the nature of a writing that a person signs with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms." BLACK'S LAW DICTIONARY 661 (6th ed. 1990). Fraud in the inducement, which is broader, is defined as "[f]raud connected with [the] underlying transaction and not with the nature of the contract or document signed. Misrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations she has undertaken." *Id*.

13

*FDIC v. Fireman's Ins. Co.*, 109 F.3d 1084, 1089 n.1 (5th Cir. 1997).  Tracking the definition of fraud in factum, the Mississippi Supreme Court has applied an exception to the imputed knowledge rule:

> If a person is ignorant of the contents of a written instrument and signs it under mistaken belief, induced by misrepresentation, that it is an instrument *of a different character*, without negligence on his part, the agreement is void.

*Johnson v. Brewer*, 427 So. 2d 118, 123 (Miss. 1983) (emphasis added).

Although it used the word "induced", it is clear from this language that the Mississippi Supreme Court is discussing fraud in factum.  Here, this exception cannot apply because Plaintiffs do not claim they misapprehended the character of the documents.

Second, *Godfrey, Bassett & Kuykendall* provides an exception for equitable relief:  "[F]ailure to read a contract before signing it, although it may constitute negligence, will not bar equitable relief to one who has executed a contract in reliance upon false representations made to him by the other contracting party".  584 So. 2d at 1259.  *See* *Turner v. Terry*, 799 So. 2d 25, 36 (Miss. 2001) (citing *Godfrey* rule, but not applying because plaintiffs failed to prove fraud).

This exception does not apply because Plaintiffs are not seeking equitable relief.  They seek damages.  In any event, the facts are distinguishable.  There, a construction contractor failed

14

to read a contract into which he entered with the construction site owner. The contract was drafted by a third-party architect. Before bidding on the project, the contractor contacted the architect to inquire whether the contract included a $9,000 contingency term that had to be included in the bid. The architect said it did not. Inadvertently, the term was left in the contract the contractor signed, and the owner refused to pay the contractor $9,000. The contractor sued the third-party architect for restitution based on misrepresentation. Here, Plaintiffs are suing the signatories and drafters of the contracts.

### D.

For the final issue, the district court ruled that, as a matter of law, no fiduciary relationship existed between Individual Defendants (insurance agents) and Plaintiffs. Plaintiffs contend the district court erred because, *at least arguably*, a fiduciary relationship could have existed. They primarily claim that Mississippi case law has previously held a fiduciary relationship exists between an insurance agent and an insured, by virtue of their relationship. Further, they claim that, even if that is not the case, the facts indicate Plaintiffs trusted the agents, which brought about such a relationship.

"Under Mississippi law, there is no fiduciary relationship or duty between an insurance company and its insured in a first party insurance contract." *Langston v. Bigelow*, 820 So. 2d 752, 756

15

(Miss. Ct. App. 2002) (quoting *Gorman v. Southeastern Fidelity Ins. Co.*, 621 F.Supp. 33, 38 (S.D. Miss. 1985)). *See also General Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 270 (Miss. 1999) ("[T]he general rule is that there is no presumption of a fiduciary relationship between a debtor and creditor." (alteration in original; quotation omitted)), *cert. denied*, 534 U.S. 944 (2001). "In Mississippi, the purchase of insurance is deemed to be an arms' length transaction." *Langston*, 820 So. 2d at 756.

> *Langston* rejected claims like those asserted here:

> > [Plaintiff] claims that the trust and dependence with regard to insurance is inherent in the very nature of the contract, thus creating the special fiduciary relationship.... We find, though, that [Plaintiff] is mistaken in his belief that this mere contractual obligation on the part of the insurer to pay a claim creates any special trust or fiduciary relationship.

*Id*. at 756-57.

A fiduciary duty may exist to *procure* insurance, if a bank sells credit insurance. *First United Bank of Poplarville v. Reid*, 612 So. 2d 1131 (Miss. 1992), considered whether a fiduciary duty arose when a bank employee agreed to purchase credit life insurance for a loan applicant. The court concluded that the bank became an insurance agent with a duty to procure insurance. Nonetheless, because the certificate of insurance showed its terms on its face, the bank did not have a duty to disclose any terms, even though the loan applicants had not read the policy.

16

Although Plaintiffs point to affidavits in which some Plaintiffs state they trusted and relied on Individual Defendants, none of this evidence shows circumstances *justifying* such reliance. Plaintiffs do not claim Defendants failed to procure insurance; moreover, they do not claim Defendants violated the written terms of the insurance contract or created a hidden scheme to defraud them. *Cf.* ***American Bankers Ins. Co. of Florida v. Alexander***, 818 So. 2d 1073 (Miss. 2001) (fiduciary duty between bank, credit insurance company, and lendee arose where claim of "hidden scheme" between bank and insurance company increasing insurance rates); ***Lowery v. Guaranty Bank & Trust Co.***, 592 So. 2d 79 (Miss. 1991) (fiduciary duty arose between bank and lendee/insured where long history of dealings with bank aside from the note).

## III.

For the foregoing reasons, because there is not arguably a reasonable basis for predicting Individual Defendants could be liable under Mississippi law, the remand-denials are **AFFIRMED** and these cases are **REMANDED** for further proceedings consistent with this opinion.

*AFFIRMED; REMANDED*.

17