# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 15-60229
Summary Calendar

November 6, 2015

Lyle W. Cayce
Clerk

FREDRICK NORWOOD; VIRGINIA MCLAUREN; DANIELLE WADE,

Plaintiffs - Appellants

v.

CITY OF MENDENHALL, MISSISSIPPI; DONALD BRUCE BARLOW;
CLAY HOLLOWELL,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:13-CV-580

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Plaintiffs–Appellants Fredrick Norwood, Virginia McLauren, and Danielle Wade brought several claims pursuant to 42 U.S.C. § 1983 against the City of Mendenhall, Donald Bruce Barlow, and Clay Hollowell for alleged constitutional violations originating from a 2008 traffic stop. On appeal, Plaintiffs challenge the district court's judgment dismissing their claims as

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60229

barred by the statute of limitations.  For the following reasons, we AFFIRM the judgment of the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 5, 2008, Fredrick Norwood was arrested and charged with a number of misdemeanors and felonies after a traffic stop by police officers of the City of Mendenhall.[1]  Norwood pleaded guilty to the misdemeanors and was released on bond.  Before Norwood was released, City of Mendenhall Chief of Police Donald Bruce Barlow attempted to recruit Norwood as a confidential informant, but Norwood refused.[2]  Barlow then told Norwood that he would "take care of [the felony charges and misdemeanor convictions]" if Norwood paid $5,000 to a "drug fund" within one year.  Norwood stayed out of Mendenhall and did not make the $5,000 payment.

In December 2009, Clay Hollowell conducted a traffic stop of a vehicle driven by Danielle Wade and in which Norwood was a passenger.  Hollowell asked for Wade's and Norwood's driver licenses, and upon recognizing Norwood, told Norwood that "Barlow is looking for you.  He told me if I seen you, to arrest you, and you're under arrest."  Norwood exited the vehicle and left the scene.  After Wade consented to a search of the vehicle, Hollowell discovered half of a hydrocodone pill, and he arrested Wade for unlawful possession of a controlled substance.  Hollowell told Wade that if she called Norwood and had him come to the police department, Wade would be released.  Wade refused.  Hollowell never asked Wade for money relating to this charge, and Norwood was not arrested in connection with this incident.[3]

---

[1] Norwood does not contest the probable cause for this arrest.

[2] These facts are recounted in the light most favorable to Plaintiffs.  *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).

[3] The ultimate resolution of Wade's unlawful possession of a controlled substance charge is unclear, but Wade testified that she never went before a judge or jury.

No. 15-60229

On February 19, 2010, a hospital security guard conducted a check of Norwood's identification. The identification check showed that a "hold" on Norwood had been placed by the City of Mendenhall. A Mendenhall police officer thereafter transported Norwood to Simpson County jail. Several days later, Norwood was transferred to the City of Mendenhall Police Department to meet with Barlow. During that meeting, Barlow told Norwood that his "time was up on the $5,000" and that if Norwood failed to make a payment to the drug fund, Barlow would turn in the paperwork relating to the 2008 charges. Norwood was able to collect a total of $3,700, $2,000 from Virginia McLauren and $1,700 from Wade.[4] Barlow said that he would accept $3,700 in lieu of the $5,000 payment but that the $3,700 would have to be paid in cash.

In the following days, Norwood's aunt, Darlan Williams, met with Barlow and Norwood in Barlow's office. Williams gave Barlow the $2,000 from McLauren. Barlow put the money into his billfold and told Norwood and Williams that "I can make all these charges disappear." Wade subsequently met with Barlow outside of Norwood's presence and gave Barlow the remaining $1,700, which Barlow placed into his pocket. Barlow told Wade that "[Norwood] would be released shortly." No receipts were requested or provided. Norwood was subsequently released from jail on February 25, 2010. Norwood never inquired into how Barlow would take care of the charges nor did Norwood ever investigate "what, if anything, had happened with any of the charges that arose out of that 2008 arrest."

The Federal Bureau of Investigation (FBI) began investigating Barlow for a similar scheme of routinely stopping, arresting, and charging individuals with various crimes and then extorting money or property from those

---

[4] There is conflicting evidence in the record regarding the exact amount provided by each plaintiff. For purposes of this opinion, we refer to the amounts as described by Norwood.

3

individuals to dismiss the criminal charges.  In August 2010, FBI agents interviewed Wade and told her that the money did not go to the drug fund. And on September 22, 2012, FBI agents told Norwood that they were investigating whether the money had been converted to Barlow's own use. Barlow was ultimately indicted on February 5, 2013, and he pleaded guilty to one count of conspiracy. The count to which Barlow pleaded guilty comprised several events not involving any Plaintiffs here.

On September 16, 2013, Plaintiffs filed their original action against Barlow, Hollowell, and the City of Mendenhall.  The most recent operative pleading, Plaintiffs' Fourth Amended Complaint, asserts claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Ninth, and Fourteenth Amendments.  The City of Mendenhall moved for summary judgment on the grounds that Plaintiffs' claims were time barred under Mississippi's statute of limitations. Hollowell moved to dismiss, or in the alternative for summary judgment, and Barlow filed a motion to dismiss, with both motions alleging similar grounds as the City's motion.  On March 4, 2015, the district court granted all Defendants' motions.  The district court found that "Plaintiffs' § 1983 claims accrued, and the statute of limitations began to run, in February 2010 at the latest," more than three years before the claims were brought in September 2013.  The district court also found that Mississippi's three-year statute of limitations was not tolled by fraudulent concealment or equitable estoppel.  The district court therefore found that the claims were time barred under Mississippi law, dismissing all of Plaintiffs' claims with prejudice.  The district court entered final judgment the same day.  Plaintiffs timely appealed.

4

No. 15-60229

## II.   FRAUDULENT CONCEALMENT

On appeal, Plaintiffs contend that the district court erred in granting Defendants' motions after finding that Plaintiffs' § 1983 claims were time barred.  In particular, Plaintiffs allege that the district court erred in finding that the statute of limitations was not tolled by fraudulent concealment.[5]

We review a grant of summary judgment *de novo*, applying the same standard as the district court.[6]  *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For § 1983 claims, we borrow the statute of limitations and tolling principles from the forum state.  *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008).  In Mississippi, a three-year statute of limitations applies.  *Edmonds v. Oktibbeha Cty.*, 675 F.3d 911, 916 (5th Cir. 2012) (citing Miss. Code Ann. § 15-1-49).[7]  However, "fraudulent concealment of a cause of action tolls its statute

---

[5] In a footnote, Plaintiffs allege in passing that the § 1983 claims did not accrue "until Plaintiffs experienced the mental anguish and financial hardship upon learning that Barlow used Plaintiffs' money for his personal gain."  However, this issue is waived because Plaintiffs failed to adequately brief the issue.  *See X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 411 n.3 (5th Cir. 2013) (noting that an issue is waived when a plaintiff fails to include the issue in its statement of issues, fails to supply the relevant standard of review, and fails to mention the argument in its reply).

[6] Since matters outside the pleadings were considered by the district court, the motions to dismiss are also treated as motions for summary judgment.  Fed. R. Civ. P. 12(d); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1283–84 (5th Cir. 1990).

[7] The relevant provision provides:

All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

5

of limitations." *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000) (quoting *Myers v. Guardian Life Ins. Co. of Am., Inc.*, 5 F. Supp. 2d 423, 431 (N.D. Miss. 1998). Under Mississippi's fraudulent concealment statute:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67. To demonstrate fraudulent concealment, Plaintiffs must show "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." *Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 84 (Miss. 2003); *accord Whitaker v. Limeco Corp.*, 32 So. 3d 429, 436 (Miss. 2010).

Plaintiffs have failed to demonstrate affirmative acts or conduct by the Defendants. On appeal, Plaintiffs do not point to any evidence in the record showing affirmative acts of concealment. Plaintiffs contend, rather, that they do not have to establish affirmative acts of concealment because the underlying wrong—Barlow's scheme charging individuals with crimes and then offering to "take care" of the charges for payment—was "self-concealing." However, the case relied upon by Plaintiffs, *In re Catfish Antitrust Litigation*, 826 F. Supp. 1019 (N.D. Miss. 1993), is inapposite. The district court there analyzed the applicability of self-concealing wrongs based on Fifth Circuit precedent that analyzed *Texas's* fraudulent concealment doctrine. *Id.* at 1030–31. However, we have previously rejected applying the self-concealing approach to *Mississippi's* fraudulent concealment statute, *Liddell v. First Family Fin. Servs., Inc.*, 146 F. App'x 748, 750–52 (5th Cir. 2005) (unpublished), because

---

Miss. Code Ann. § 15-1-49(1).

"Mississippi law is unambiguous: Plaintiffs must prove a subsequent affirmative act of fraudulent concealment to toll the limitations." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 463–64 (5th Cir. 2003). Mississippi courts have continued to require subsequent affirmative acts of concealment. *See, e.g.*, *Bennett v. Hill-Boren, P.C.*, 52 So. 3d 364, 372 (Miss. 2011); *Whitaker*, 32 So. 3d at 437–38. Plaintiffs have therefore failed to show any evidence of affirmative acts of concealment by Defendants.

Furthermore, Plaintiffs have failed to present any evidence of their due diligence in discovering their claims. In particular, Plaintiffs must prove that "despite [their] due diligence, [they were] unable to discover the claim." *Andrus v. Ellis*, 887 So. 2d 175, 181 (Miss. 2004); *Robinson*, 763 So. 2d. at 887. Norwood never inquired into how Barlow would "take care" of the charges, nor did Norwood investigate the status of his charges after the $3,700 was paid and he was released from jail. And there is no evidence in the record of any actions taken by Wade or McLauren to discover their claims. While Plaintiffs are correct that both the concealment and due diligence prongs are questions of fact normally left to a jury, *Whitaker*, 32 So. 3d at 436, Plaintiffs have failed to present any evidence raising a genuine dispute as to either prong. *See Liddell*, 146 F. App'x at 752 (upholding summary judgment when Plaintiffs failed to "allege[] any subsequent acts of concealment"); *Carter v. Citigroup Inc.*, 938 So. 2d 809, 819–20 (Miss. 2006) (affirming summary judgment when Plaintiffs failed to show any material dispute on either prong of fraudulent concealment). The district court thus did not err in finding that the statute of limitations was not tolled due to fraudulent concealment.

## III.    LIMITED DISCOVERY

Nor have Plaintiffs showed that the district court abused its discretion in granting Defendants' motions during limited discovery. Plaintiffs contend that the district court erred because discovery was limited to the issue of

Barlow's qualified immunity claim, and the district court should have allowed Plaintiffs to depose Barlow on information relevant to their fraudulent concealment argument. "We review a district court's discovery decisions for abuse of discretion and will affirm such decisions unless they are arbitrary or clearly unreasonable." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000). "When a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error." *Access Telecom, Inc., v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999). However, discovery "may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

Plaintiffs have failed to show that the requested discovery would produce the facts needed to withstand summary judgment. As discussed above, Plaintiffs have failed to show "due diligence was performed on their part to discover [the fraudulent concealment of the claim]." *Stephens*, 850 So. 2d at 84. While Plaintiffs argue that further discovery would help in determining "whether a reasonable person similarly situated would have discovered potential claims," *Whitaker*, 32 So. 3d at 436, such discovery is unnecessary to develop evidence of *Plaintiffs' own actions* toward uncovering the fraudulent concealment. *See Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1414 (5th Cir. 1987) ("If [material facts] known to plaintiffs had been omitted from the record, discovery was not needed to develop them."). Thus, the district court did not abuse its discretion in granting Defendants' motions after limited discovery.

## IV.   CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.